T.C. Memo. 1996-249


UNITED STATES TAX COURT


JOHN CHRISTOPHER SINGLETON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4164-94.                    Filed May 30, 1996.


John C. Singleton, pro se.

T. Keith Fogg and Veena Luthra, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, Judge: Respondent determined that petitioner in his capacity as a fiduciary of the Estate of Marguerite B. Greer (sometimes referred to as the Estate) was personally liable under 31 U.S.C. section 3713(b) (1994) for unpaid estate taxes owing by the Estate in the amount of $32,443, plus interest. Respondent

reflected this determination in a notice of liability mailed to petitioner on December 21, 1993.

Petitioner acknowledges that he permitted Estate assets to be distributed before all estate taxes had been paid; however, he disputes personal liability for the unpaid estate taxes on the basis that (1) the period of limitations for collection of the unpaid estate taxes had expired prior to the mailing of respondent's notice, and (2) he did not have knowledge of the Government's claim for unpaid estate taxes prior to July 24, 1981 (when petitioner and the other co-executor agreed to a tax deficiency of $12,701 on behalf of the Estate and signed Form 890 and by that date the greatest amount of distributions by the Estate to others had been made). Accordingly, the issues we must decide are:

(1) Whether the period of limitations for collection of the unpaid estate taxes of the Estate expired prior to respondent's mailing of a notice of fiduciary liability to petitioner. We hold that it did not.

(2) Whether petitioner is personally liable under 31 U.S.C. section 3713(b)(1994) for unpaid estate taxes (and accrued interest thereon) owing by the Estate. We hold that petitioner is liable for unpaid estate taxes together with interest accrued thereon to December 21, 1993, the date respondent's notice of liability was mailed to petitioner.

Except as otherwise indicated, all section references are to

the Internal Revenue Code in effect as of the date of Marguerite B. Greer's death. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

### Background

Petitioner resided in Hot Springs, Virginia, at the time he filed his petition. He is an attorney engaged in the practice of law in Bath County, Virginia.[1]

Petitioner and Faith B. Gardiner were co-executors of the Estate of Marguerite B. Greer; petitioner was also the attorney of record for the Estate. Ms. Greer died on April 29, 1976; at the time of her death, Ms. Greer was a resident of Bath County.

Ms. Gardiner was an adopted child of Ms. Greer and was the sole beneficiary of Ms. Greer's estate. Ms. Gardiner resided in New Jersey at all relevant times.

During 1978, Ms. Gardiner took Estate assets to her residence in New Jersey to have them appraised. The property was stolen during a burglary of Ms. Gardiner's home. A $38,000 theft loss was claimed on the estate tax return.

---

[1] During most of the period of time relevant to this case, petitioner was the prosecuting attorney for Bath County, Virginia, an elected position. He had a private law practice on the side.

The estate tax return was filed on June 4, 1979. The amount of tax shown on the return to be due ($7,972) was paid at the time the return was filed. Subsequently, the Estate made a payment to the Internal Revenue Service (IRS) in the amount of $1,204; the reason for this payment is not stated in the record.

Respondent examined the estate tax return in 1981 and disallowed the $38,000 theft loss, contending that at the time of the theft the assets stolen no longer were the property of the Estate but rather had been distributed to Ms. Gardiner as beneficiary. Petitioner and Ms. Gardiner agreed to the resulting tax assessment of $12,701 by signing Form 890 (Waiver of Restrictions on Assessment and Collection of Deficiency) on July 24, 1981. The assessment for the $12,701 deficiency occurred on December 7, 1981.

In 1987, a representative of respondent requested petitioner to sign an agreement extending the 6-year period of limitations for collection of the deficiency against the Estate, which petitioner refused to do. A representative of respondent then approached Ms. Gardiner with the same request; she signed the Form 900 agreement (Tax Collection Waiver) on October 16, 1987, which extended the period for collection to December 31, 1993.

Statutory interest of $31,275 had accrued on the deficiency through December 21, 1993 (the mailing date of the notice of liability to petitioner). Penalties assessed with respect to the deficiency through December 21, 1993, totaled $191. Payments on

the deficiency were made as follows:  $7,000 on April 22, 1982;
$4,537 on December 27, 1990; and $186 on January 17, 1991.

The Estate made the following disbursements during the years
1976-1990:

|      | Total Disbursements | Disbursements To Ms. Gardiner[1] | Disbursements To Petitioner | Disbursements To IRS |
|------|------|------|------|------|
| 1976 | $156,265 | $14,678 | $3,500 | --- |
| 1977 | 103,894 | 56,500 | 3,000 | --- |
| 1978 | 14,395 | --- | 1,000 | $9,176 |
| 1979 | 14,723 | --- | --- | --- |
| 1980 | 1,616 | --- | 1,600 | --- |
| 1981 | 24 | --- | --- | --- |
| 1982 | 16,503 | 9,503 | --- | 7,000 |
| 1986 | 6,000 | 6,000 | --- | --- |
| 1988 | 10 | --- | --- | --- |
| 1990 | 10,890 | --- | 5,800 | 4,537 |

[1]     Except for a $50,000 payment to Ms. Gardiner in
1977, the payments to her were characterized on the
Estate's final accounting statement as fees.

Sometime after 1981, Ms. Gardiner suffered severe financial and
physical difficulties; at the time of trial, she was comatose in a
nursing home in North Carolina.  The IRS made no attempt to collect
the deficiency, interest, or penalty from Ms. Gardiner.

OPINION

The executor of an estate has the ultimate responsibility for
payment of the Federal estate tax.  Sec. 2002.  If the executor
pays the debts of the estate, or distributes any portion of the
estate to a beneficiary, before satisfying the estate's obligation
to the Government for estate taxes, then the executor is personally
liable, to the extent of the payment to the estate's creditors or

the distribution to the beneficiary, for so much of the estate tax as remains unpaid. 31 U.S.C. sec. 3713(b) (1994).

In the instant case, the IRS determined that petitioner was personally liable for unpaid estate taxes due by the Estate of Marguerite B. Greer because he allowed the Estate to make payments to its creditors, as well as a distribution to Ms. Gardiner as sole beneficiary of the Estate, without first satisfying the estate tax claim of the Government. Petitioner filed a petition in this Court challenging the IRS' determination. We have jurisdiction to hear petitioner's case. Secs. 6212, 6213, 6901; Rule 13(a).

Petitioner contends that the period of collection of the Estate's unpaid estate taxes had expired prior to the mailing of the notice of liability. We hold that it did not. The reasoning for our holding follows.

Section 6901(c)(3) provides that the period of limitations for assessment of fiduciary liability shall be not later than 1 year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the later. Section 6502 provides that where the assessment of tax has been made within the period of limitations properly applicable thereto (which here it has been[2]),

---

[2] Sec. 6501(a) requires that the tax must be assessed within 3 years of the date the tax return was filed. In the instant case, the estate tax return was filed on June 4, 1979, and the executors signed Form 890 consenting to the deficiency on July 24, 1981. The assessment of the deficiency was made on
(continued...)

the tax may be collected by levy or court proceeding commenced within 6 years of the date of assessment, or within any period agreed to by the taxpayer and the IRS if the agreement for such different (extension) period is in writing made before the expiration of the aforementioned 6-year period.

Respondent claims that the Form 900 signed by Ms. Gardiner extended the period for collection to December 31, 1993. Petitioner argues that the Form 900 extension was ineffective because it was signed nearly 3 months after the expiration of the 6-year period of limitations for collection. He further argues that Ms. Gardiner could not unilaterally extend the collection period of limitations to his detriment.

Because the Form 900 extension was signed outside the 6-year period running from July 24, 1981 (the date Form 890 was signed), the burden of going forward shifts to respondent. Mecom v. Commissioner, 101 T.C. 374, 382 (1993), affd. 40 F.3d 385 (5th Cir. 1994). The record shows that respondent has met her burden. Although the Form 890 was signed on July 24, 1981, the assessment relating thereto occurred on December 7, 1981.[3]  Ms. Gardiner

---

[2](...continued)
Dec. 7, 1981.

[3]  Form 890 is a waiver of restriction on assessment and collection of the deficiency. It is not an assessment. An assessment is made by recording the liability of a taxpayer in the office of the Secretary in accordance with prescribed rules or regulations. Sec. 6203. The date of assessment is the date the summary record of assessment is signed by the assessment

(continued...)

signed Form 900 on October 16, 1987.  Hence, the signing of Form 900 occurred within 6 years of the date of assessment (December 7, 1981).

Petitioner was notified of his fiduciary liability by a notice of liability mailed on December 21, 1993.  That date was within the extended period for collection.

Petitioner posits that because he refused to sign the Form 900, the agreement between Ms. Gardiner and the IRS to extend the period of limitations on the collection of the estate tax is not binding as to him.  Petitioner argues that one co-executor may not unilaterally waive, extend, or revive the collection period of limitations to the detriment of the other co-executor.  In support of this position, petitioner cites Virginia law which provides:

> No acknowledgment or promise by any personal representative of a decedent shall charge the estate of the decedent, revive a cause of action otherwise barred or * * * in any case in which but for such acknowledgment or promise, the decedent's estate could have been protected under a statute of limitations.

Va. Code Ann. sec. 8.01-232 par. B.

A waiver of the period of limitations for assessment of

---

³(...continued)
officer.  Sec. 301.6203-1, Proced. & Admin.  Although neither party submitted the record of assessment, which would show, among other things, the date of assessment, the Form 900 signed by Ms. Gardiner indicates that the assessment date was Dec. 7, 1981. Further, the notice of liability sent to petitioner shows the date of assessment to be Dec. 7, 1981.  Other than pointing to the date he signed Form 890, petitioner did nothing to prove that the assessment date was not Dec. 7, 1981.

Federal tax executed by an executor is not rendered invalid by provisions of any State law. Bartlett v. Commissioner, 16 B.T.A. 510, 513 (1929). We have held that one co-executor may bind an estate irrespective of State law requirements. See Ewart v. Commissioner, 85 T.C. 544, 549 (1985), affd. 814 F.2d 321 (6th Cir. 1987). Thus, we hold that Ms. Gardiner's execution of Form 900 effectively extended the period of collection of the Estate's unpaid taxes to December 31, 1993.

A representative of an estate paying a debt of the estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government. 31 U.S.C. sec. 3713(b)(1994). Here, there is no question but that petitioner permitted the Estate to make payments to others and that at the time the notice of liability was mailed to petitioner there remained unpaid estate taxes.

The Estate made payments to Ms. Gardiner not only prior to the date the co-executors signed Form 890 (that is, prior to July 24, 1981) but also in 1982 and 1986 totaling approximately $15,500. These latter payments appear to be made to Ms. Gardiner as beneficiary, rather than as executor. In defending his making the latter payments, petitioner states in his post-trial brief:

> those payments were made at a time when Petitioner was attempting to communicate and resolve the tax liability with the Internal Revenue Service. As indicated by this Petitioner previously the State of Virginia inheritance tax division closed the estate and Petitioner never received any response to its [sic] communications to the Internal Revenue Service and while, with hindsight, the

payments to Faith B. Gardiner were not advisable, at the time, she was in necessitous circumstances and Petitioner could get no response from the Internal Revenue Service.

Petitioner's argument misses the point. As petitioner apparently recognizes, the distributions to Ms. Gardiner were inadvisable. No distributions should have been made to Ms. Gardiner before the Estate satisfied its tax obligation. Petitioner could have avoided the situation he now faces by making a written application for discharge of personal liability as provided for in section 2204(a).[4]

Petitioner made payments of approximately $70,000 to Ms.

---

[4]    Sec. 2204(a) provides:

(a)  General Rule.

If the executor makes written application to the Secretary for determination of the amount of the tax and discharge from personal liability therefor, the Secretary (as soon as possible, and in any event within 9 months after the making of such application, or, if the application is made before the return is filed, then within 9 months after the return is filed, but not after the expiration of the period prescribed for the assessment of the tax in section 6501) shall notify the executor of the amount of the tax.  The executor, on payment of the amount of which he is notified (other than any amount the time for payment of which is extended under section 6161, 6163, or 6166), and on furnishing any bond which may be required for any amount for which the time for payment is extended, shall be discharged from personal liability for any deficiency in tax thereafter found to be due and shall be entitled to a receipt or writing showing such discharge.

Gardiner even before the estate tax return was filed. Petitioner is an attorney. He knew or should have known that distributions to a beneficiary of an estate prior to satisfying the estate tax are made at the executor's peril.

Petitioner states in his post-trial brief:

> but for the disallowance of the 1978 theft from the estate, this case would not be in court as that deficiency assessment caused the estate to have insufficient funds to pay all claims including the claim of the Internal Revenue Service.

Again, petitioner's argument misses the point. It was petitioner's permitting the Estate to distribute funds to others which resulted in the plight petitioner now faces, rather than the disallowance of the claimed theft loss. Consequently, we hold petitioner liable under 31 U.S.C. section 3713(b) (1994).

When an executor incurs personal liability under 31 U.S.C. section 3713(b) (1994), his liability for unpaid estate tax and accrued interest thereon prior to the date the executor's liability for the estate tax arose is limited to the amount of payments made to others. To our knowledge, there are no cases discussing whether an executor is liable for interest accruing after the notice of liability has been mailed. Respondent requests us to hold that interest accrues until the estate tax, and interest accrued thereon, is paid. In this regard, respondent argues that we should extend the rationale this Court adopted in Baptiste v. Commissioner, 100 T.C. 252 (1993), affd. 29 F.3d 1533 (11th Cir.

1994), affd. in part and revd. in part 29 F.3d. 433 (8th Cir. 1994) to cover the situation involved herein. We decline to do so. <u>Baptiste</u> involved transferee liability. We held in that case that a transferee's liability for interest accrued on unpaid estate tax owed by a transferee (that is, the interest accrued on the tax after the transferee liability arose) was not limited (under sec. 6324(a)(2)) to the value of the property transferred from the estate to the transferee. The Court of Appeals for the Eighth Circuit disagreed and held that the interest accrued is limited to the value of the property transferred. <u>Baptiste v. Commissioner</u>, 29 F.3d at 438.

In our opinion, an executor's liability under 31 U.S.C. section 3713(b) (1994) is different from that of a transferee. A transferee has the benefit of enjoying the transferred property; such is not the case with an executor. To require an executor (here, petitioner) to be subject to the interest on funds he did not have the benefit of enjoying would constitute a punitive act for which there is no legal authority.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.